IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| KELVIN SIMMONS,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>KARIN L. HOLMA, *in her individual and official capacity as Judge of the First Circuit Court, State of Hawaii*, et al.,<br><br>　　　　Defendants. | Case No. 25-cv-00307-DKW-WRP<br><br>**ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS, (2) DISMISSING THE COMPLAINT WITH LEAVE TO AMEND, AND (3) DENYING PLAINTIFF'S VARIOUS MISCELLANEOUS MOTIONS** |

Defendants Karin Holma, Lisa Cataldo, Lori Ann Okita, Susan Pang Gochros, and John/Jane Doe ADA Coordinator[1] (collectively, State Defendants) move to dismiss with prejudice all claims brought in *Pro Se* Plaintiff Kelvin Simmons' July 22, 2025 Complaint. Dkt. No. 127. The State Defendants do so on numerous grounds, including the *Rooker-Feldman*[2] and *Younger*[3] doctrines and judicial and qualified immunity. For his part, since filing the Complaint less than five months ago, Simmons has filed a steady stream of documents – more than one

---

[1]As discussed further below, the John/Jane Doe ADA Coordinator named in the Complaint has been identified as Debi Tulang-DeSilva. *See* Dkt. No. 127-1 at 1 n.2.

[2]*Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923); *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

[3]*Younger v. Harris*, 401 U.S. 37 (1971).

hundred -- some of which appear to request some form of non-dispositive relief

from the Court, including motions to disqualify counsel, strike filings, and review

decisions of the assigned U.S. Magistrate Judge.

Upon review of the record *in toto*, while the Court disagrees that the

liberally construed *pro se* Complaint implicates the *Rooker-Feldman* or *Younger*

doctrines, all claims against the State Defendants are subject to dismissal based on

judicial and qualified immunity.   However, because Simmons is proceeding

without counsel and this is the first opportunity to apprise him of certain relevant

legal principles, dismissal is with leave to amend, to the extent permitted below.

In short, the motion to dismiss is GRANTED AND DENIED IN PART.   As for

Simmons' many filings since his Complaint, they are either mistaken, misplaced,

and/or moot in light of the rulings herein.   They are, therefore, all DENIED, as

explained below.

## BACKGROUND

Simmons initiated this proceeding on July 22, 2025, with the filing of the

Complaint against Defendants Karin Holma and Lisa Cataldo, in both their official

and individual capacities as Judges of the First Circuit Court of the State of

Hawaiʻi, John/Jane Doe "Clerk(s) of the Court", in his and/or her official and

individual capacity(ies), Lori Okita as the "Court Administrator", in her official

2

and individual capacity, John/Jane Doe "ADA Coordinator", in his or her official and individual capacity, Susan Pang Gochros as "Chief Staff Attorney", in her official and individual capacity, Jason Woo, Stott Property Management LLC, and Timothy Kelley.   Dkt. No. 1.

Liberally construed, Simmons alleges the following in the Complaint.   At some unalleged time and date, Judge Holma and Jason Woo, an alleged attorney, "conspired to create a procedural trap designed to deprive" Simmons of access to the courts.   Dkt. No. 1 at 4.[4]   This conduct included "scheduling a hearing", "refusing to rule", and "advancing litigation while withholding decisions".   *Id*. at 4-5.   According to the Complaint, Judge Cataldo joined in the "conspiracy" "through a pattern of mutual reinforcement, conflicting orders, and retaliatory silence."   *Id*. at 5.   On July 14 and 15, 2025, Judge Cataldo issued a "retaliatory order" in "exce[ss]" of her jurisdiction and an order "calculated to undermine" Simmons.   Between July 11 and 15, 2025, Judge Cataldo also issued orders in "violation of judicial restraint and appellate comity…."   *Id*. at 7.

The Complaint further alleges that, in July 2025, Simmons faxed a "detailed administrative complaint" to "officials" of the "Court Administrator Judiciary" and

---

[4]The pages and paragraphs of the Complaint are unnumbered.   *See generally* Dkt. No. 1. Therefore, in citing to the Complaint and Simmons' other filings, the Court uses the page numbers assigned by CM/ECF in the top-right corner of the same, *e.g.*, "Page 4 of 15".

received a response from Chief Staff Attorney Gochros acknowledging the

complaint, but denying authority to intervene and referring Simmons to the

"Commission on Judicial Conduct."    *Id*. at 4.    In addition, on unalleged dates,

unidentified "[c]ourt clerks" "participated in docket tampering by omitting,

suppressing, or mislabeling" Simmons' filings.    *Id*. at 5.    The "court clerks" also

"refused to docket" or "acknowledge receipt" of other filings Simmons submitted.

*Id*. at 6.    "Clerks" further "failed to serve orders[.]"    *Id*. at 7.

     The Complaint asserts 12 numbered causes of action allegedly involving

numerous violations of 42 U.S.C. Section 1983, Section 1985, the Americans With

Disabilities Act (ADA), abuse of process, civil conspiracy, "failure to perform

ministerial duties", and "litigation fraud".    *Id*. at 9-10.    The Complaint seeks $40

million in damages, a declaration that Simmons' rights have been violated,

prospective injunctive relief to "mandate ADA compliance", and the "referral" of

"judges", Woo, Kelley, and Stott Property Management to various licensing and/or

disciplinary boards.    *Id*. at 13.

     On October 27, 2025, the State Defendants moved to dismiss all claims in

the Complaint with prejudice.    Dkt. No. 127.    First, the State Defendants argue

that Simmons' claims are barred by the *Rooker-Feldman* doctrine.    Second, they

argue that this Court should abstain from deciding the claims under *Younger*.

Third, they argue that all claims against Judges Holma and Cataldo are barred by principles of judicial immunity.   Fourth, they argue that Okita, Gochros, and Tulang-Silva are entitled to qualified immunity on all claims.   Fifth, they argue that the Complaint fails to allege any specific act or omission by the State Defendants that caused Simmons' alleged injuries, as required under Section 1983. Finally, the State Defendants argue that Simmons is not entitled to leave to amend the Complaint.

On November 10, 2025, Simmons filed a "reply" to the motion to dismiss, which the Court liberally construes as his response to the same.   Dkt. No. 150. Therein, Simmons argues, among other things, that all proceedings in a State court case "are void under the poison-tree doctrine…",[5] the *Rooker-Feldman* doctrine does not apply here, and Judges Holma and Cataldo "acted under suspended jurisdiction".   *Id*. at 4-7.[6]   On November 21, 2025, the State Defendants filed a reply in support of their motion to dismiss.   Dkt. No. 168.

Since the Complaint, Simmons has filed a plethora of documents.   In large part, these documents purport to provide "notice" of various things Simmons

---

[5]The State court case is identified as case number 1DRC-23-0006533.   Dkt. No. 150 at 4.
[6]Simmons also argues that the motion to dismiss is "void ab initio" because it was filed prior to the State Defendants being served, or waiving service of, process.   Dkt. No. 150 at 2.   Simmons is mistaken, however, because the State Defendants waived service of process in *August* 2025, two months before filing their motion.   Dkt. Nos. 45-49.

presumably believes are relevant to this case.    For example, Simmons has

provided "notice" of "anticipated" arguments he thinks defendants may raise, Dkt.

No. 40, the "procedural posture" of this case, Dkt. No. 56, "record preservation and

judicial housekeeping", Dkt. No. 70, and "anticipated retaliation and procedural

interference", Dkt. No. 99.    Other documents arguably seek affirmative relief from

this Court, some of which remain undecided.    Those undecided documents, which

are liberally construed as motions, are: (1) a motion for "prejudgment asset

protection and notice of bankruptcy shield assertion", Dkt. No. 22; (2) a motion for

"separate counsel", Dkt. No. 65; (3) a motion to "clarify and reinstate Rule 4(m)

extension", Dkt. No. 108; (4) a motion for "record clarification and preservation",

Dkt. No. 109; (5) a motion for "preservation of DOJ oversight record and federal

chain of custody", Dkt. No. 112; (6) a motion to "clarify and vacate EO 87", Dkt.

No. 115; (7) a motion to "clarify, vacate, or reconsider EO 104", Dkt. No. 116;

(8) a motion for "clarification and preservation", Dkt. No. 121; (9) a motion for

"judicial preservation of logs and metadata", Dkt. No. 125; (10) a motion to

"convert January 2 hearing to sanctions/show-cause", Dkt. No. 140; (11) a motion

to "confirm void jurisdiction", Dkt. No. 145; (12) a motion for "review" regarding

"EO 143", Dkt. No. 146; (13) a motion to "strike EO 147 as void for lack of

authority", Dkt. No. 148; (14) a motion for "protective order", Dkt. No. 173; (15) a

6

motion to "disqualify for conflicts of interest and unauthorized representation",
Dkt. No. 177; (16) a motion to "strike Docket 168 in its entirety", Dkt. No. 178;
and (17) a motion for various relief, Dkt. No. 179 (collectively, the Miscellaneous
Motions).

This Order now follows.

## STANDARDS OF REVIEW

### I.    Federal Rule of Civil Procedure 12(b)(1)

"The *Rooker-Feldman* doctrine recognizes that federal district courts
generally lack subject matter jurisdiction to review state court judgments."
*Fontana Empire Ctr., LLC v. City of Fontana*, 307 F.3d 987, 992 (9th Cir. 2002)
(citing *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983);
*Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923)).   A challenge to the Court's
subject matter jurisdiction is brought under Federal Rule of Civil Procedure
12(b)(1).   *See* Fed.R.Civ.P. 12(b)(1) (concerning lack of subject matter
jurisdiction); *see also Murray v. Dep't of Consumer & Bus. Services*, 2010 WL
3604657, at *9 n.4 (D.Or. Aug. 12, 2010) (applying Rule 12(b)(1) principles to a
*Rooker-Feldman* argument).

When presented with an argument under Rule 12(b)(1), "the district court is
ordinarily free to hear evidence regarding jurisdiction and to rule on that issue prior

to trial, resolving factual disputes where necessary." *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983). Where the court considers evidence outside the pleadings for this purpose, "[n]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id*.

## II.    <u>Federal Rule of Civil Procedure 12(b)(6)</u>

Rule 12(b)(6) authorizes the Court to dismiss a complaint that fails "to state a claim upon which relief can be granted." Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Pursuant to *Ashcroft v. Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court "must accept the factual allegations of the complaint as true and construe them in the light most favorable to the plaintiff." *Interpipe*

*Contracting, Inc. v. Becerra*, 898 F.3d 879, 886-887 (9th Cir. 2018) (quotation
omitted).

### III.    Pro Se Status

Because Simmons is proceeding without counsel, the Court liberally
construes the Complaint.    *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987).
However, the Court cannot act as counsel for a pro se litigant, such as by
suggesting or supplying the essential elements of a claim.    *Pliler v. Ford*, 542 U.S.
225, 231 (2004); *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th
Cir. 1982).

"Unless it is absolutely clear that no amendment can cure the defect . . . a
pro se litigant is entitled to notice of the complaint's deficiencies and an
opportunity to amend prior to dismissal of the action."    *Lucas v. Dep't of Corr.*, 66
F.3d 245, 248 (9th Cir. 1995).    A court, however, may deny leave to amend
where, *inter alia*, further amendment would be futile.    *E.g.*, *Gardner v. Martino*,
563 F.3d 981, 990 (9th Cir. 2009); *Leadsinger, Inc. v. BMG Music Publ'g*, 512
F.3d 522, 532 (9th Cir. 2008).

# DISCUSSION

## I.    Motion to Dismiss

The State Defendants move for dismissal on numerous grounds.   The Court begins with the State Defendants' jurisdictional-related arguments.

### A.    *Rooker-Feldman*

The Ninth Circuit Court of Appeals has explained that a claim is forbidden under the *Rooker-Feldman* doctrine "when the plaintiff in federal district court complains of a legal wrong allegedly committed by the state court[] and seeks relief from the judgment of that court."   *Noel v. Hall*, 341 F.3d 1148, 1163 (9th Cir. 2003).   However, when "the federal plaintiff does not complain of a legal injury caused by a state court judgment, but rather of a legal injury caused by an adverse party, *Rooker-Feldman* does not bar jurisdiction."   *Id*.   Similarly, " a prior state court judgment and a federal plaintiff seeking to relitigate a matter already litigated in state court [are] not circumstances sufficient to invoke *Rooker-Feldman*…."   *Miroth v. Cty. of Trinity*, 136 F.4 1141, 1149 (9th Cir. 2025).

Here, upon review, the Court does not understand Simmons' liberally construed claims as implicating the *Rooker-Feldman* doctrine.   Specifically, while the Complaint's allegations clearly take aim at decisions made and actions taken during a State court litigation involving Simmons, the claims do not necessarily

10

seek relief from any *judgment* entered by a State court, assuming the existence of

such a judgment.   For example, the relief sought in the Complaint–in particular,

the large damages request–appears untethered to any judgment that was

purportedly entered in the State court.   Of course, the foregoing is based upon a

liberal construction of the Complaint.   Should the contours of the relief sought in

this case alter to an extent different than the ones now construed by the Court, it

may be more evident that the *Rooker-Feldman* doctrine is applicable, as the State

Defendants contend.   At this juncture, though, the Court DENIES dismissal based

upon *Rooker-Feldman*.

>    B.    <u>*Younger*</u>

Having determined that subject matter jurisdiction is not barred under

*Rooker-Feldman*, the Court now addresses whether to refrain from exercising such

jurisdiction under *Younger*.   *See Canatella v. Cal.*, 404 F.3d 1106, 1113 (9th Cir.

2005) ("Although *Younger* neither provides a basis for nor destroys federal

jurisdiction, *Younger* does determine when the federal courts must refrain from

exercising jurisdiction.") (quotation omitted).

The Ninth Circuit has explained that *Younger* applies "only to three"

categories of cases: (1) ongoing state criminal prosecutions; (2) certain civil

enforcement proceedings; and (3) "civil proceedings involving certain orders

uniquely in the furtherance of the state courts' ability to perform their judicial functions." *Applied Underwriters, Inc. v. Lara*, 37 F.4 579, 588 (9th Cir. 2022) (quotation and ellipsis omitted). As for the second category, the Ninth Circuit explained that its "hallmark" is that "such proceedings are akin to a criminal prosecution in important respects." *Id*. (concluding that an "insurance conservatorship" was not such a proceeding) (quotations omitted). As for the third category, it stands "in aid of the authority of the judicial system, so that its orders and judgments are not rendered nugatory[,]" and has been applied with respect to civil contempt orders and the posting of appeal bonds. *Id*. at 590 n.4 (quotation omitted).[7]

Here, upon review, the Court does not find that any of the three categories identified above exist and, thus, there is no reason to abstain from exercising jurisdiction under *Younger*. First, unsurprisingly, no one argues that the State court proceedings at issue in this case, which the State Defendants describe as stemming from a "summary possession complaint" for unpaid rent, Dkt. No. 127-1 at 3, involve a state *criminal* prosecution. Second, perhaps for similar reasons, no

---

[7]The Ninth Circuit further explained that, if the State proceeding fell into one of the three categories of cases, *Younger* abstention may be warranted if an additional three requirements were met. *Lara*, 37 F.4th at 588. For the reasons discussed below, because the State proceedings here do not fall into one of the three categories, it is unnecessary to address the additional requirements for application of *Younger*.

one argues that the State court litigation is a civil enforcement proceeding "akin" to a *criminal* prosecution in any important respect.   This leaves the third category.   The State Defendants appear to contend that the State court litigation implicates the third category, asserting that the litigation "involve[s] the enforcement of state court orders and judgments."   Dkt. No. 127-1 at 10.   Even if so, however, it is true only to the extent that Simmons is pursuing attempts to overturn what the State Defendants describe as unfavorable rulings.   *See id.* (describing "Simmons' subsequent attempts to have that decision reversed.").   In other words, whether warranted or not, the State Defendants characterize this action as Simmons pursuing appellate opportunities, which is hardly of the ilk necessary to implicate the third category of *Younger* cases.   *See Lara*, 37 F.4th at 590 n.4.   As a result, because none of the three categories identified by the Ninth Circuit are at-play here, the Court declines to abstain from exercising jurisdiction in this case.

C.    *Judicial Immunity*

Turning to the non-jurisdictional-related arguments, the State Defendants next assert that all claims against Judges Holma and Cataldo are barred by judicial immunity.   Dkt. No. 127-1 at 14-19.   Based upon the allegations of the Complaint, the Court agrees.   Specifically, in the Complaint, *all* of Judge Holma and Judge Cataldo's alleged acts are ones related to the judicial process, including

13

"scheduling a hearing", "creat[ing]" judgment, "refusing to rule", "advancing litigation", and "issu[ing]" orders.   Dkt. No. 1 at 4-6.   This is classic fare barred by judicial immunity.   *See In re Castillo*, 297 F.3d 940, 947 (9th Cir. 2002) (explaining that courts have "long recognized judicial immunity, a sweeping form of immunity for acts performed by judges that relate to the judicial process.") (quotations omitted).   This is true even of the Judges' alleged "conspiracy" with Woo.   *See Moore v. Brewster*, 96 F.3d 1240, 1244 (9th Cir. 1996) ("Nor is judicial immunity lost by allegations that a judge conspired with one party to rule against another party….").   Therefore, the Court finds the claims for damages against Judges Holma and Cataldo to be barred by judicial immunity.   *See id*. ("state officials enjoy judicial or quasi-judicial immunity from damages only") (citing *Pulliam v. Allen*, 466 U.S. 522, 541-542 (1984)).

D.    *Qualified Immunity*

The State Defendants next argue that Okita, Gochros, and Tulang-DeSilva are entitled to qualified immunity because the Complaint fails to allege how any of these individuals violated constitutional rights that were clearly established.   Dkt. No. 127-1 at 19-22.   The Court agrees.   Specifically, the Complaint is almost

14

devoid of any factual allegations concerning these individuals.[8]    Gochros is

merely alleged to have "acknowledged" a misconduct complaint and "refer[ed]"

Simmons to a "Commission on Judicial Conduct."    Dkt. No. 1 at 4.    The ADA

Coordinator is mysteriously alleged to have "disclaimed responsibility" for an

unidentified matter.    *Id*. at 7.    Meanwhile, there are no factual allegations directed

specifically toward Okita.    Simmons provides no explanation in his briefing on the

motion to dismiss or in the Complaint how this minimal conduct comes close to

violating a constitutional right, let alone a clearly established one.    *See Mullenix v.*

*Luna*, 577 U.S. 7, 11 (2015) (explaining that qualified immunity protects officials

who do "not violate clearly established statutory or constitutional rights of which a

reasonable person would have known.") (quotations omitted).    And the Court

cannot think of how either.    Therefore, all claims against Okita, Gochros, and

Tulang-DeSilva/ADA Coordinator are dismissed on the grounds of qualified

immunity and failure to state a plausible claim.

---

[8]With respect to Tulang-DeSilva, as mentioned, she is not identified by name in the Complaint.
Instead, the Complaint names John/Jane Doe ADA Coordinator, Dkt. No. 1 at 2, which the State
Defendants assert is Tulang-DeSilva, Dkt. No. 127-1 at 1 n.2.    While Simmons appears to have
protested Tulang-DeSilva being identified as the John/Jane Doe ADA Coordinator, *see, e.g.*, Dkt.
No. 51, he has provided no evidence that Tulang-DeSilva is *not* the ADA Coordinator.
Therefore, at this juncture, the Court accepts the State Defendants' representations in this regard.

E.    *Leave to Amend*

As just discussed, the Complaint does not come close to stating claims against any of the State Defendants because, as alleged, their conduct is protected by principles of judicial and qualified immunity.   Nonetheless, Simmons is proceeding without counsel and, prior to this Order, the Court has not provided him with an explanation of any deficiencies with the Complaint.   In addition, while judicial immunity is a "sweeping form of immunity", there are exceptions. *See Moore*, 96 F.3d at 1244 (explaining that "the doctrine of judicial immunity knows two limits", which are: (1) when a judge acts "in the clear absence of all jurisdiction"; and (2) "only judicial acts are protected.") (quotations omitted). Therefore, under these circumstances, the Court finds leave to amend the Complaint to be appropriate.

Specifically, should he so choose, Simmons may file an amended complaint to address the deficiencies identified herein with respect to the claims against the State Defendants.   In doing so, he must write short, plain statements of: (1) the legal right he believes was violated; (2) the name of the specific defendant(s) who violated that right; (3) exactly what each defendant did or failed to do and when; (4) how the action or inaction of that defendant is connected to the violation of the legal right; and (5) what specific injury he suffered because of the defendant's or

16

defendants' conduct.   **Simmons must repeat this process for each right and
each person or entity named as a defendant.**

In addition, should he file an amended complaint, Simmons may not
incorporate any part of the Complaint, Dkt. No. 1, therein.   Instead, the amended
complaint must stand alone; in other words, if filed, it must contain all factual
allegations and claims upon which Simmons wishes to rely.   Therefore, to the
extent any claims from the Complaint are not re-alleged in any amended
complaint, those claims will be deemed voluntarily dismissed.   *See Lacey*, 693
F.3d at 928 (stating that claims dismissed with prejudice need not be re-alleged in
an amended complaint to preserve them for appeal, but claims that are voluntarily
dismissed are considered waived if they are not re-pled).

## II.    <u>Miscellaneous Motions</u>

As mentioned, Simmons has filed a multitude of documents in this case,
some of which appear to seek relief from this Court and remain pending.   The
Court now turns to these Miscellaneous Motions.

### A.    *<u>Motion for Prejudgment Asset Protection, Dkt. No. 22</u>*

At the initiation of this case, Simmons asked this Court to issue "an advisory
notice discouraging any transfers or concealment of assets" because he had "reason
to believe" Defendants may attempt to "obstruct judgment or evade

accountability". Dkt. No. 22 at 2-3. This motion is DENIED for numerous

reasons, including the fact that Simmons' suspicions and beliefs are not a reason

for the Court to take any action in this case.

### B. *Motion for Separate Counsel, Dkt. No. 65*

On September 8, 2025, Simmons moved for an order seeking "recognition"

that Woo is "disqualified" from acting as counsel in this case and for an order

requiring each Defendant to obtain separate counsel. Dkt. No. 65 at 2-3. This

motion is DENIED for numerous reasons, including the fact that Simmons cannot

dictate counsel for any of the Defendants or create a scenario, such as Woo acting

as counsel, that does not presently exist.

### C. *Motion to Clarify and Reinstate Rule 4(m) Extension, Dkt. No. 108*

On October 17, 2025, Simmons sought clarification of an October 16, 2025

Entering Order denying his motion to extend the deadline to serve the Complaint.

The premise for both motions appears to be Simmons' belief that the State

Defendants have not properly appeared in this case because their waivers of

service were "fabricated". Dkt. No. 108 at 3. Other than his say-so, Simmons

provides nothing to substantiate this position. Therefore, this motion is DENIED.

18

D.    _Motion for Record Clarification and Preservation, Dkt. No. 109_

On October 20, 2025, Simmons asked the Court to take "judicial notice" of

an "ongoing benefit" being allegedly derived by Woo, Stott Property Management,

and Kelley from the State court litigation.    Dkt. No. 109 at 5.    This motion is

DENIED for numerous reasons, including the fact that the matter is not appropriate

for taking judicial notice.    Fed.R.Evid. 201(b) (permitting judicial notice of

"adjudicative fact[s]" that are "not subject to reasonable dispute").

E.    _Motion for Preservation of DOJ Oversight, Dkt. No. 112_

On October 20, 2025, Simmons also asked this Court, among other related

things, to take "judicial notice" of "DOJ" involvement in this case and order the

"preservation of all DOJ and USAO communications".    Dkt. No. 112 at 4.    This

motion is DENIED for numerous reasons, including, as mentioned, the

inappropriateness of this matter for judicial notice and the complete lack of a basis

for the requested relief.

F.    _Motion to Clarify and Vacate EO 87, Dkt. No. 115_

Still on October 20, 2025, Simmons moved for vacatur of an October 6,

2025 Entering Order that denied three motions all related to the State Defendants'

waivers of service.    This motion is DENIED for the same reason mentioned

above.    Specifically, other than simply stating that the waivers were

19

"unauthorized", Simmons provides no evidence of the same or that counsel from the State of Hawai'i Attorney General's Office are otherwise "unauthorized" to represent the State Defendants.

G.      *Motion to Clarify, Vacate, or Reconsider EO 104, Dkt. No. 116*

Again on October 20, 2025, Simmons moved to vacate an October 17, 2025 Entering Order that denied a motion he filed seeking sanctions against the State Defendants' counsel related to the waivers of service discussed above.   For the reasons mentioned already, this motion is DENIED.

H.      *Motion for Clarification and Preservation, Dkt. No. 121*

On October 23, 2025, Simmons requested "[c]larification" that the period to serve the Complaint had been "toll[ed]" through December 31, 2025.   Dkt. No. 121 at 3.   With respect to the State Defendants, this motion is DENIED AS MOOT because they have waived service of summons.   Dkt. Nos. 45-49.   In other words, there is no further need to serve a copy of the Complaint on them. With respect to Woo, Stott Property Management, and Kelley, the motion is DENIED because Simmons provides no explanation or basis for extending the 90-day period to serve the Complaint under Rule 4(m).

I.    *Motion for Judicial Preservation of Logs and Metadata, Dkt. No. 125*

On October 27, 2025, Simmons moved for a "protective order" to allegedly preserve all logs, metadata, and "email/fax headers" from the CM/ECF system due to Simmons "confirming systematic tampering and metadata anomalies during post-shutdown reinitialization." Dkt. No. 125 at 2-3. Because this motion is clearly frivolous and completely irrelevant, it is DENIED.

J.    *Motion to Convert January 2 Hearing, Dkt. No. 140*

On November 3, 2025, Simmons sought to "convert" a January 2, 2026 hearing to a "sanctions/show-cause" hearing, "withdrawal" of the State Defendants' counsel, and an order "prohibit[ing]" Woo from serving as counsel. Because the January 2, 2026 hearing has been vacated, Dkt. No. 149, this motion is DENIED AS MOOT with respect to the same. The motion is also DENIED for the reasons already discussed to the extent Simmons seeks to disqualify or bar any attorney in this case.

K.    *Motion to Confirm Void Jurisdiction Status, Dkt. No. 145*

On November 4, 2025, Simmons moved for, among other things, "Magistrate anti-communication orders" to be declared void and "confirm[ation]" of "void jurisdiction posture retroactive to Oct[ober] 2023". Dkt. No. 145 at 4. This motion is DENIED. With respect to unidentified orders of the assigned

Magistrate Judge, Simmons provides no explanation for why any such order may be void.   *See* 28 U.S.C. § 636(b)(1)(A) (providing that a Magistrate Judge can hear and determine *any* pretrial matter, except for certain motions not relevant here).   As for an alleged "void jurisdiction posture", this appears to concern the State court litigation involving Simmons, rather than the jurisdiction of this Court. *See* Dkt. No. 145 at 2 (citing a State court case number).   It is, therefore, not something properly raised here.[9]

L.    *Motion for Review of EO 143, Dkt. No. 146*

On November 4, 2025, Simmons also moved for "review" of a November 3, 2025 Entering Order denying various requests for relief Simmons had sought. Dkt. No. 146 at 1.   Simmons appears to contend that the November 3, 2025 Entering Order was "void" because the Magistrate Judge is not an "Article III Judge", subject-matter jurisdiction has been challenged, and this case has "documented poison-origin defects".   *Id*. at 3.   This motion is DENIED for numerous reasons, most of which have already been mentioned, including the

---

[9] The premise of the argument—that the State court lacked jurisdiction because Simmons raised purported "federal defenses" in his "state court Answer"—is also misplaced.   *See Holmes Group, Inc. v. Vornado Air Circulation Systems, Inc.*, 535 U.S. 826, 831 (2002) (explaining that neither a defendant's counterclaim nor answer can serve as the basis for federal question jurisdiction); *Takeda v. Nw. Nat'l Life Ins. Co.*, 765 F.2d 815, 821 (9th Cir. 1985) (stating that a case arises under federal law "only if the federal question appears on the face of the plaintiff's well-pleaded complaint.")

Magistrate Judge having authority to determine pretrial matters, Simmons not actually challenging the subject matter jurisdiction of this Court, and the purported "poison-origin defect[]" neither being poisonous nor relevant to the jurisdiction of this Court.

M.    _Motion to Strike EO 147 as Void for Lack of Authority, Dkt. No. 148_

For the reason discussed above, this motion is DENIED because, contrary to Simmons' belief, the assigned Magistrate Judge has the authority to determine pretrial matters, such as Simmons' requests to strike filings and disqualify counsel.

N.    _Motion for Protective Order, Dkt. No. 173_

On November 26, 2025, Simmons moved for a "protective order" from "abusive filings" and the referral of counsel for the State Defendants due to assertions in the reply in support of the motion to dismiss.   Dkt. No. 173 at 2. This motion is DENIED for numerous reasons, including the fact that the State Defendants have not engaged in any "abusive filings" in this case, which includes the reply.[10]

---

[10]It also strains credulity for a litigant, such as Simmons, to seek a "protective order" from "abusive filings" when, in less than five months, he has made well over 100 filings of his own, none of which has resulted in any relief sought by Simmons.

O.    *Motion to Disqualify, Dkt. No. 177*

On November 28, 2025, Simmons moved again to disqualify Woo and counsel for the State Defendants from involvement in this case.    Because Simmons provides no new or good reasons for doing so, for the reasons already discussed above, this motion is DENIED.

P.    *Motion to Strike Docket 168 in its Entirety, Dkt. No. 178*

On November 28, 2025, Simmons also moved to strike the State Defendants' reply in support of the motion to dismiss.    Because Simmons provides no valid reason for striking the reply, which was expressly authorized by the Court's briefing schedule on the motion to dismiss, Dkt. No. 149, this motion is DENIED.

Q.    *Motion for Various Relief, Dkt. No. 179*

Still on November 28, 2025, Simmons moved for a greatest-hits worth of relief, including the striking of the reply, a "metadata/NEF preservation order", "Rule 16 protections", and a "block" on Woo.    Dkt. No. 179 at 6-7.    For all the reasons discussed above, and because Simmons provides no valid basis for any of the requested relief, this motion is DENIED.

## **CONCLUSION**

For the reasons set forth herein, the motion to dismiss, Dkt. No. 127, is

GRANTED IN PART and DENIED IN PART.   The Complaint, Dkt. No. 1, is

DISMISSED WITH LEAVE TO AMEND to the extent permitted herein.

**Simmons may have until January 9, 2026 to file an amended complaint.**

**Should Simmons not file a timely amended complaint, this action will be**

**dismissed without further notice and with prejudice.**

The Miscellaneous Motions (Dkt. Nos. 22, 65, 108, 109, 112, 115, 116, 121,

125, 140, 145, 146, 148, 173, 177-179) are DENIED for the reasons set forth

above.

IT IS SO ORDERED.

DATED: December 22, 2025 at Honolulu, Hawai'i.



Derrick K. Watson
Chief United States District Judge

25